1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,              No. 2:22-cv-01962-DJC-AC

12                    Plaintiff,

13    v.                                     ORDER

14    MARK LINN BRYAN, et al.,

15                    Defendants.

16

17          Plaintiff United States filed this action to reduce federal tax assessments against

18    Defendant Mark L. Bryan to judgment and to foreclose federal tax liens on a

19    residential property owned by Mr. Bryan and his former spouse, Lori Bryan.  Before

20    the Court is the United States' Motion for Summary Judgment pursuant to Federal

21    Rule of Civil Procedure 56.  (ECF No. 201.)  Since the Court heard argument in the

22    United States' Motion, Mr. Bryan moved for leave to amend his counterclaims (ECF

23    No. 227) and filed a Motion to Dismiss (ECF No. 229).  For the reasons stated below,

24    the Court grants the United States' Motion and denies Mr. Bryan's motions.

25                                **BACKGROUND**

26          Mark L. Bryan is a United States citizen who has lived in California his entire life.

27    (Defendant Lori Bryan's Response to Plaintiff's Statement of Undisputed Facts ("RSUF")

28

1

1    (ECF No. 205-1) ¶¶ 1–3.)[1]  Mr. Bryan has not filed a federal income tax return since

2    2002. (*Id*. ¶ 4.)

3         In this case, the United States seeks to reduce to judgment federal tax

4    assessments against Mr. Bryan for unpaid taxes solely between 2014 and 2017.

5    During these years, Mr. Bryan earned income for machine work and other services he

6    performed. (*Id*. ¶¶ 5–6.)  Mr. Bryan also collected interest income and social security

7    payments during the relevant period. (*Id*. ¶ 8.)  In each year, Mr. Bryan received an

8    income in excess of the threshold filing amount. (*Id*. ¶¶ 7, 9.)

9         In 2018, the IRS reviewed its records to determine Mr. Bryan's tax liability under

10   26 U.S.C. § 6020(b). (*Id*. ¶ 13.)  The IRS calculated Mr. Bryan's unpaid taxes for the tax

11   years 2013–2017 and proposed penalties based on a bank record deposit analysis

12   and review of other information in the IRS's Information Returns Processing System.

13   (*Id*. ¶ 14.)  After Mr. Bryan did not respond to a letter informing him of these penalties

14   and inviting him to file tax returns, the IRS issued a statutory notice of deficiency to Mr.

15   Bryan. (*Id*. ¶¶ 16–17.)  Though Mr. Bryan "returned" the notice of deficiency to the IRS,

16   he did not timely appeal. (*Id*. ¶¶ 19–20.)  On April 29, 2019, the IRS assessed unpaid

17   taxes and penalties for Mr. Bryan for the relevant years. (*Id*. ¶ 21.)  The IRS then issued

18   two notices and demands for payment to Mr. Bryan in late spring of 2019. (*Id*. ¶¶ 21–

19   22.)  To date, Mr. Bryan has not made full payment of the assessed amounts. (*Id*.

20   ¶ 23.)

21        The United States now seeks to foreclose federal tax liens on Mr. Bryan and Lori

22   Bryan's residential property at 10301 East Newfield Road, Lodi, California 95240 (the

23   "Subject Property"). (*Id*. ¶ 28; Plaintiff's Motion for Summary Judgment ("Mot.") (ECF

24   No. 201) at 1.)  Mr. and Ms. Bryan married in 1980. (RSUF ¶ 24.)  The couple

25   purchased the Subject Property together in 1995 and has co-owned it since that time.

26   (*Id*. ¶¶ 31, 35.)  The grant deed states that Mr. and Ms. Bryan acquired the Subject

27

28   [1] The Court only cites portions of the separate statement of facts provided by Plaintiff that Defendant
     Lori Bryan expressly states are undisputed.

2

1    Property as "husband and wife as joint tenants."  (Mot., Ex. 10 (ECF No. 201-25) at 1.)

2    In 1998, Mr. and Ms. Bryan executed two grant deeds, one transferring their interests

3    in the Subject Property to themselves as community property, and the other

4    transferring their interests to themselves as trustees of a trust.  (RSUF ¶ 36.)  In 2001,

5    Mr. and Ms. Bryan executed another deed transferring their interests in the Subject

6    Property from themselves as trustees to themselves as "husband and wife as

7    community property with right of survivorship."  (*Id.* ¶ 37.)

8         In early 2017, the IRS informed Mr. and Ms. Bryan that it intended to request

9    that the U.S. Department of Justice file a suit to reduce Mr. Bryan's previous unpaid tax

10   liabilities to judgment and to foreclose on the Subject Property.  (*Id.* ¶¶ 42–43.)  Over

11   the course of the next few years, the IRS repeatedly warned the Bryans that the IRS

12   intended to foreclose on the Subject Property if Mr. Bryan did not file his delinquent

13   tax returns.  (*Id.* ¶¶ 43, 45–50, 52, 72.)  Although Mr. Bryan initially indicated that he

14   would comply and file his returns, he later informed Ms. Bryan, who informed an IRS

15   Officer, that he had changed his mind.  (*Id.* ¶¶ 49, 53.)

16        In 2018, Ms. Bryan signed a Quitclaim deed, which purportedly transferred her

17   title and interest in the Subject Property to herself as trustee of the Lori M. Bryan

18   Separate Property Revocable Trust.  (*Id.* ¶ 56.)  Mr. Bryan did not sign the Quitclaim

19   Deed nor otherwise agree in writing to the transfer of any portion of the Subject

20   Property in relation to this Quitclaim deed.  (*Id.* ¶¶ 57–58.)  Ms. Bryan's 2018 deed was

21   recorded in the San Joaquin County Recorder's Office on May 15, 2018.  (*Id.* ¶ 60.)

22   The IRS recorded a Notice of Federal Tax Lien on the Subject Property with the same

23   Recorder's Office on July 15, 2019.  (*Id.* ¶ 70.)

24        The United States now moves for summary judgment, seeking to reduce the

25   relevant federal tax assessments against Mr. Bryan to judgment and to foreclose

26   federal tax liens on the Subject Property.  Briefing on the United States' Motion is now

27

28

1    complete.  (Mot. (ECF No. 201); (MB[2] Opp'n (ECF No. 204); (MB Am. Opp'n (ECF No.

2    208); (LB[3] Opp'n (ECF No. 205); (Reply (ECF No. 207).  The Court heard argument on

3    Plaintiff's Motion for Summary Judgment on November 6, 2025.  Connor Pestovich

4    appeared for Plaintiff, Steven Cottrell appeared for Defendant Lori Bryan, and

5    Defendant Mr. Bryan appeared in propria persona.  The United States' Motion was

6    taken under submission.  (*See* ECF No. 223.)  In accordance with this Court's Order at

7    ECF No. 121, the United States has not filed oppositions to either of Mr. Bryan's

8    Motions.  Pursuant to Local Rule 230(g), Mr. Bryan's Motion for Leave to Amend (ECF

9    No. 227) and Motion to Dismiss (ECF No. 229) are submitted without oral argument.

10                                **LEGAL STANDARD**

11           Summary judgment may be granted when the evidence shows that there is no

12   genuine issue as to any material fact and the moving party is entitled to judgment as a

13   matter of law.  Fed. R. Civ. P. 56(c).  The principal purpose of summary judgment is to

14   dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477

15   U.S. 317, 325 (1986).  Therefore, the "threshold inquiry" is whether there are any

16   factual issues that could reasonably be resolved in favor of either party, or conversely,

17   whether the facts are so one-sided that one party must prevail as a matter of law.

18   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986).

19           However, "[o]nly disputes over facts that might affect the outcome of the suit

20   under the governing law will properly preclude the entry of summary judgment." *Id.* at

21   248.  A "material" fact is relevant to an element of a claim or defense that may affect

22   the outcome of the case.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

23   626, 630 (9th Cir. 1987).  "Disputes over irrelevant or unnecessary facts will not

24   preclude a grant of summary judgment." *Id.*

25

26   _____

27   [2] These initials stand for "Mark Bryan" and indicate Mr. Bryan filed the identified pleading.

28   [3] These initials stand for "Lori Bryan" and indicate Ms. Bryan filed the identified pleading.

1      In a summary judgment motion, the moving party must inform the court of the

2  basis for the motion and identify the portion of the record that it believes

3  demonstrates the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at

4  323.  If the moving party meets its initial burden, the burden then shifts to the

5  opposing party, who must establish that there is a genuine issue of material fact.

6  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). To meet

7  their burden, parties must either cite to materials in the record supporting their

8  position or show that the materials cited do not establish the absence or presence of a

9  genuine dispute.  Fed. R. Civ. P. 56(c)(1).

10      For the opposing party to succeed and avoid summary judgment, they "must

11  do more than simply show that there is some metaphysical doubt as to the material

12  facts."  *Matsushita*, 475 U.S. at 586.  Rather, the opposing party must produce enough

13  evidence to show that, based on this evidence, a reasonable trier of fact could find in

14  the opposing party's favor.  *T.W.*, 809 F.2d at 631.  In other words, for the moving

15  party to succeed, the court must conclude that no rational trier of fact could find for

16  the opposing party.  *Matsushita*, 475 U.S. at 587.  However, so as not to usurp the role

17  of the jury, "[c]redibility determinations, the weighing of the evidence, and the

18  drawing of legitimate inferences from the facts are jury functions."  *Liberty Lobby*, 477

19  U.S. at 255; *Matsushita*, 475 U.S. at 587–88.  Therefore, the court draws all reasonable

20  inferences and views all evidence in the light most favorable to the opposing party.

21  *Id.*

22                                    **DISCUSSION**

23  **I.   Reduction of Federal Tax Assessments to Judgment**

24      This Court has the power to render judgments "as may be necessary or

25  appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).  "In

26  an action to collect taxes, the government bears the initial burden of proof."  *In re*

27  *Olshan*, 356 F.3d 1078, 1084 (9th Cir. 2004) (internal quotation marks omitted).  The

28  government may satisfy this burden by presenting the Court with federal tax

5

1    assessments.  *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983).

2    Deficiency determinations and assessments for unpaid taxes are "presumed correct,

3    so long as they are supported by minimal factual foundation." *Olshan*, 356 F.3d at

4    1084; *see also United States v. Weldon*, No. 21-15311, 2022 WL 2340807, at *1 (9th

5    Cir. June 29, 2022).  Once the government presents these assessments to the Court,

6    the burden shifts to the taxpayer to show by a preponderance of the evidence that a

7    deficiency "determination is arbitrary, excessive or without foundation."  *Olshan*, 356

8    F.3d at 1084.  "If the taxpayer fails to rebut the presumption, the government is

9    entitled to judgment as a matter of law."  *United States v. Vacante*, 717 F. Supp. 2d

10   992, 1004 (E.D. Cal. 2010) (citing *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir.

11   1993).

12         The United States has satisfied its initial burden.  In support of this Motion, the

13   United States submits Form 4340s calculating Mr. Bryan's tax liabilities and penalties

14   for 2014–2017.[4]  (*See* Mot., Ex. A-7 (ECF 201-10).)  "Certificates of Assessments and

15   Payments ('Form 4340s') are highly probative and in the absence of contrary evidence

16   are sufficient to establish a tax assessment was properly made and notice and

17   demand for payment were sent."  *Vacante*, 717 F. Supp. 2d at 1004 (citing *Huff v.*

18   *United States*, 10 F.3d 1440, 1445 (9th Cir. 1993)).  The United States supplies factual

19   foundation for these forms by submitting a Declaration by Vesta Chan, the IRS agent

20   who determined Mr. Bryan's tax liabilities for the relevant years.  (Chan Decl. (ECF 201-

21   3).)  This Declaration explains how Revenue Agent ("RA") Chan assessed Mr. Bryan's

22   tax liabilities.  (*Id*. ¶¶ 8–9.)  The United States also submits Mr. Bryan's bank records,

23   which provided the basis for RA Chan's bank deposit analysis.  (*See* Mot. Exs. A-1–A-5

24   (ECF Nos. 201-4–201-8).)  These submissions provide sufficient factual basis for the

25   government's assessments to shift the burden to Mr. Bryan to rebut the presumption

26   that these assessments are correct.

27

28
[4] As a levy on Mr. Bryan's social security income has paid his tax liabilities for 2013, the United States does not seek to reduce the 2013 tax assessment to judgment in this action.  (*See* Mot. at 12 n.5.)

1    Mr. Bryan fails to rebut this presumption.  Mr. Bryan argues that the United

2    States has not produced his signed Form 1040s.  (MB Am. Opp'n at 2.)  He contends

3    that 26 U.S.C. § 6020(b) does not authorize the IRS to create substitute forms in the

4    absence of a taxpayer filing Form 1040s and that, without such a form, any IRS

5    assessment is "unsupported" and "presumptive."[5]  *Id.*  However, "[c]ourts in the Ninth

6    Circuit have repeatedly recognized the authority of the IRS and its agents to prepare

7    substitute income tax returns for taxpayers who do not file a Form 1040" pursuant to

8    section 6020(b).  *United States v. Howe*, No. 2:19-cv-00421-DCN-CWD, 2023 WL

9    6516418, at *7 (D. Idaho Oct. 5, 2023), *report and recommendation adopted*, No.

10   2:19-cv-00421-DCN, 2025 WL 1065476 (D. Idaho Apr. 9, 2025), *reconsid. denied*, No.

11   2:19-cv-00421-DCN, 2025 WL 1632125 (D. Idaho Apr. 15, 2025) (collecting cases).

12   Therefore, Mr. Bryan has failed to rebut the presumption that the submitted

13   assessments are accurate, and the United States is entitled to summary judgment on

14   the tax assessments at issue here.

15   **II.  Foreclosure of Lien**

16       If a taxpayer fails to pay taxes after the IRS provides notice and demands

17   payment, a lien arises in favor of the United States.  26 U.S.C. § 6321.  The lien arises

18   "at the time the assessment is made and shall continue until the liability for the amount

19   so assessed (or a judgment against the taxpayer arising out of such liability) is

20   satisfied."  26 U.S.C. § 6322.  This lien attaches to "all property and rights to property,

21   whether real or personal, belonging to such person."  26 U.S.C. § 6321; *see also*

22   *United States v. McDermott*, 507 U.S. 447, 448 (1993).

23

24   [5] Mr. Bryan also seeks to make this argument as a counterclaim in his proposed amended complaint.
     (*See* Mot. for Leave to Amend (ECF No. 227), Ex. A at 3.)  For the reasons stated here, an amendment to
     include this counterclaim would be futile.  Amendment would also be futile as Mr. Bryan's proposed

25   amended complaint seeks only declaratory relief.  (*See id.* at 3–4.)  The "United States is entitled to
     sovereign immunity from declaratory relief judgments 'with respect to Federal taxes.'"  *Hodgson v.*

26   *United States*, 357 F. App'x 879, 880 (9th Cir. 2009) (quoting 28 U.S.C. § 2201); *E.J. Friedman Co. v.*
     *United States*, 6 F.3d 1355, 1358–59 (9th Cir. 1993).  Therefore, the Court would lack subject matter

27   jurisdiction over Mr. Bryan's proposed counterclaims.  Accordingly, the Court denies Mr. Bryan's Motion
     for Leave to Amend (ECF No. 227.)

28

1    Once the United States has a lien on a property, the United States may bring an

2    action in district court to foreclose the lien under section 7403 of the Internal Revenue

3    Code.  26 U.S.C. § 7403(a).  This Section grants the Court authority to order the sale of

4    a delinquent taxpayer's home.  *United States v. Rodgers*, 461 U.S. 677, 692–94 (1983);

5    *see also* 26 U.S.C. § 7403(c).  Before the Court can order a sale, the United States must

6    name as defendants "[a]ll persons having liens upon or claiming any interest in the

7    property involved."  26 U.S.C. § 7403(b).  Then, the Court may adjudicate the merits of

8    all claims to and liens on the property, order a sale, and distribute the sale proceeds

9    to claimants in priority order.  26 U.S.C. § 7403(c).  Though this Section grants the

10   Court discretion not to enforce the liens, such discretion is "limited" and "should be

11   exercised rigorously and sparingly, keeping in mind the Government's paramount

12   interest in prompt and certain collection of delinquent taxes."  *Rodgers*, 461 U.S. at

13   711.

14   These requirements are satisfied here.  It is undisputed that the IRS provided

15   notice and demands to Mr. Bryan for taxes owed for the relevant years.  (RSUF ¶¶ 21–

16   22.)  The IRS assessed Mr. Bryan's unpaid taxes and penalties for 2013–2017 on April

17   29, 2019.  (*Id.* ¶ 21.)  On this date, a federal tax lien arose and attached to Mr. Bryan's

18   property.  26 U.S.C. §§ 6321–6322.

19   The United States has also shown that Mr. Bryan had a property right to the

20   Subject Property sufficient to authorize its sale.  The parties do not dispute that Mr.

21   Bryan owned at least a one-half interest in the Subject Property at that time.  (RSUF

22   ¶¶ 28, 35.)  The United States is not required to show Mr. Bryan owned the whole

23   property to warrant foreclosure of its tax lien.  *See Rodgers*, 461 U.S. at 692–94.  When

24   the lien arose, it attached to whatever property interest Mr. Bryan had in the Subject

25   Property.  *Id.*  So long as this lien has attached and the other requirements are met,

26   the United States is entitled to foreclosure and sale of the whole property regardless

27   of Mr. Bryan's ownership percentage.  *Id.*

28

1    Finally, the United States has named as defendants all persons claiming an

2    interest in the Subject Property.  These parties include the State of California Franchise

3    Tax Board, San Joaquin County, Citibank South Dakota N.A., Chase Manhattan Bank

4    USA N.A., and Uppal Farms, Inc.

5    As the United States has named all persons claiming an interest in the Subject

6    Property, shown that the IRS made tax assessments and demands against Mr. Bryan

7    for the relevant years, and established that Mr. Bryan owned the Subject Property at

8    the time the assessment was made, the Court finds the United States is entitled to

9    foreclose the federal tax lien.  *See United States v. Weldon*, No. 1:18-cv-01318-AWI-

10    SKO, 2021 WL 242858, at *5 (E.D. Cal. Jan. 25, 2021), *aff'd*, No. 21-15311, 2022 WL

11    2340807 (9th Cir. June 29, 2022) (holding United States was entitled to foreclose

12    federal tax liens where United States named as parties entities with interest in the

13    relevant property and showed tax assessments and demands were made against

14    defendant, and defendant owned relevant property).

15    **III. Proceeds of the Sale**

16    Though the foreclosure of the lien authorizes the sale of the Subject Property,

17    the Court must still determine what percent of the sale proceeds may be used in

18    satisfaction of the liens on the Subject Property.  As the Supreme Court explained in

19    *Rodgers*, "the right to collect and the right to seek a forced sale are two quite different

20    things." *Rodgers*, 461 U.S. at 691.  To determine what percent of the proceeds of the

21    sale may be collected, the Court must assess Mr. Bryan's property interests in the

22    Subject Property.  *See id.* at 697.

23    In applying the Internal Revenue Code, courts must look first to state law to

24    determine "the nature of the legal interest which the taxpayer had in the property,"

25    then to federal law for the tax consequences of that interest.  *United States v. Nat'l*

26    *Bank of Com.*, 472 U.S. 713, 722 (1985) (internal quotation marks omitted) (quoting

27    *Aquilino v. United States*, 363 U.S. 509, 513 (1960)); *see also Drye v. United States*, 528

28    U.S. 49, 58 (1999).  Therefore, to determine what percentage of the proceeds of the

1    Subject Property sale the United States is entitled to in the satisfaction of its lien, it is

2    necessary to ascertain both the state-defined contents of Mr. Bryan's rights to the

3    Subject Property and the federal significance of those rights.

### A. Mr. Bryan's State Property Rights and Interests

5        First, it is necessary for the Court to determine Mr. Bryan's property rights with

6    respect to the Subject Property.  The content of Mr. Bryan's property rights is a

7    question of state law.  *Nat'l Bank of Com.*, 472 U.S. at 722; *Aquilino v. United States*,

8    363 U.S. 509, 513 (1960).  "This follows from the fact that the [Internal Revenue Code]

9    creates no property rights but merely attaches consequences, federally defined, to

10   rights created under state law."  *Nat'l Bank of Com.*, 472 U.S. at 722 (cleaned up)

11   (quoting *United States v. Bess*, 357 U.S. 51, 55 (1985)).

12       California law presumes that all real property "acquired by a married person

13   during the marriage while domiciled in this state is community property."  Fam. Code

14   § 760.  The creditor of one spouse can collect against the whole community property,

15   "regardless of whether one or both spouses are parties to the debt."  Fam. Code

16   § 910(a).  In contrast, the "separate property of a married person is not liable for a

17   debt incurred by the person's spouse before or during marriage."  Fam. Code

18   § 913(b)(1).

19       While a married person can convey their separate property to someone else

20   without their spouse's permission, *see* Fam. Code § 770(b), conveyance of community

21   property requires spousal approval.  Specifically, section 852(a) of California's Family

22   Code provides that a transmutation of real property "is not valid unless made in

23   writing by an express declaration that is made, joined in, consented to, or accepted by

24   the spouse whose interest in the property is adversely affected."  Fam. Code § 852(a).

25   Such a transaction "requires a written document expressly acknowledging that it

26   changes the character of marital property, and that the adversely affected spouse

27   understands and accepts this result."  *In re Marriage of Benson*, 36 Cal. 4th 1096, 1111

28   (2005); *see also In re Marriage of Valli*, 58 Cal. 4th 1396, 1400 (2014) (explaining that

1    to "satisfy the requirement of an 'express declaration,' a writing signed by the

2    adversely affected spouse must expressly state that the character or ownership of the

3    property at issue is being changed"); *In re Brace*, 908 F.3d 531, 538 (9th Cir.

4    2018), *certified question answered*, 9 Cal. 5th 903 (2020).

5         Whether the Subject Property constituted community or separate property at

6    the time the lien attached hinges on the validity of the 2018 transaction.  In the years

7    immediately preceding the 2018 transfer, it is undisputed that the Subject Property

8    qualified as community property.[6]  (*See* Mot. at 15; LB Opp'n at 3.)  However, in 2018,

9    Ms. Bryan signed a Quitclaim deed, which purportedly transferred her one-half

10   interest in the Subject Property to a trust.  (RSUF ¶ 56; *see* Mot., Ex. 108 (ECF No. 201-

11   49).)  Ms. Bryan argues this transaction transmuted her one-half interest in the Subject

12   Property from community property to her separate property.  (LB Opp'n at 1, 7;

13   Statement of Undisputed Facts of Lori Bryan (ECF No. 205-2) at 4.)  The United States

14   responds that this transaction failed to transmute the Subject Property to separate

15   property as it did not comply with the statutory requirements for such transactions.

16   (Mot. at 16.)

17   ────────────────

18   [6] Mr. and Ms. Bryan first acquired the Subject Property in as a married couple in 1995.  (RSUF ¶ 31.)
     California law presumes that all property "acquired by a married person during the marriage while
     domiciled in this state is community property."  Fam. Code § 760.  Though Mr. and Ms. Bryan acquired
19   the property "as husband and wife as joint tenants," (Mot., Ex. 10 at 1), the California Supreme Court
     has held that for "property acquired with community funds on or after January 1, 1985, the titling of a
20   deed as a joint tenancy is not an express written declaration sufficient to transmute the property into
     separate property."  *In re Brace*, 9 Cal. 5th 903, 938 (2020).  Further, California courts have held that this
21   rule does not require parties to prove the source of the funds used to acquire the property for the
     section 760 presumption to apply.  *Trenk v. Soheili*, 58 Cal. App. 5th 1033, 1048 (2020), *as modified*
22   (Dec. 22, 2020).  Rather, the presumption applies to all property and "may be *rebutted* with proof that
     separate funds were used to purchase the property at issue."  *Id.*  Regardless, Mr. and Ms. Bryan then
23   purportedly transferred the Subject Property to a trust, which they later revoked in 2001.  (RSUF ¶¶ 36–
     37.)  Even if the trust instrument did not comply with the Fam. Code § 761 requirements that would
24   maintain its character as community property, after Mr. and Mr. Bryan revoked the trust, it constituted
     community property.  Mr. and Ms. Bryan transferred the property from a trust to themselves "as
25   husband and wife as community property with right of survivorship" and each signed the grant deed.
     (Mot., Ex. 13 (ECF No. 201-28); *see also* RSUF ¶ 37.)  Therefore, even if the Subject Property constituted
26   separate property while in the trust, by signing a written instrument that expressly stated the Subject
     Property would thereafter be community property, Mr. and Ms. Bryan complied with the requirements
27   of section 852 and would have validly transmuted the property from separate to community property at
     this point.
28

1    The Court finds the 2018 transaction did not validly transmute the Subject

2    Property.  It is undisputed that Mr. Bryan, the spouse whose interest would be

3    adversely affected, did not sign any such written document.  (RSUF ¶¶ 57–58.)

4    Therefore, as Ms. Bryan's transfer of her one-half interest to a trust did not conform to

5    the requirements of section 852, this transaction did not validly the Subject Property

6    from community property to separate property.  *Benson*, 36 Cal. 4th at 1112 (holding

7    the absence of a writing conforming to section 852's requirements rendered

8    transmutation invalid).

9    Although the parties dispute whether Mr. Bryan orally consented to Ms. Bryan's

10   transmutation of the Property from their community property to her separate property

11   (*see* Mot. at 16; LB Opp'n at 9), this dispute is immaterial.  Section 852's requirement

12   of an express writing applies even in the face of evidence of an oral agreement

13   between spouses consenting to the transmutation.  *See Benson*, 36 Cal. 4th at 1107

14   (explaining the California Supreme Court has "acknowledged that section 852 might

15   prevent courts from finding a transmutation in cases where some evidence suggests

16   the spouses meant to change the character of their property, but where they failed to

17   follow the statutory requirements").  As this factual dispute is not material, it cannot

18   preclude summary judgment.

19   However, the fact that the 2018 transaction is invalid under section 852 does

20   not inherently render the Subject Property community property.  The California Court

21   of Appeal for the Second District has held this Section does not automatically void a

22   noncompliant transaction.  *Safarian v. Govgassian*, 47 Cal. App. 5th 1053, 1068 (2020).

23   Rather, the transaction is voidable by only the adversely affected spouse.[7]  *Id*.

24   Therefore, Mr. Bryan has a right to void the transmutation under California law.

25

26
      ---

27   [7] The United States urges this Court to depart from *Safarian*'s rule as the California Supreme Court has
     not ruled on whether a transaction that fails to comply with section 852's requirements is void or
     voidable.  This Court is unpersuaded that the California Supreme Court would reach a different
28   conclusion and declines to do so.

1   **B. Federal Implications**

2         As the right to void the transaction constitutes one of Mr. Bryan's property

3   rights under California law, the United States' lien extends to this right and the United

4   States may void the transaction.  "'Once it has been determined that state law creates

5   sufficient interests in the taxpayer to satisfy the requirements of the statute, state law is

6   inoperative,' and the tax consequences thenceforth are dictated by federal law." *Nat'l*

7   *Bank of Com.*, 472 U.S. at 722 (quoting *Bess*, 357 U.S. at 56–57 (1985)) (cleaned up).

8         "[W]hen identifying assets to be sold" to satisfy a lien, "the United States 'steps

9   into the taxpayer's shoes' and 'acquires whatever rights the taxpayer himself

10  possesses.'" *United States v. Allahyari*, 980 F.3d 684, 693 (9th Cir. 2020) (quoting *Nat'l*

11  *Bank of Com.*, 472 U.S. at 713).  The Supreme Court has repeatedly held that federal

12  tax liens may attach to a taxpayer's state property rights such that the United States

13  may exercise those rights on behalf of the taxpayer, even when ordinary creditors and

14  other third parties could not do the same.  *See, e.g.*, *Drye*, 528 U.S. at 53, 61 (holding

15  federal tax lien attached to taxpayer's "personal" right to disclaim an inheritance and

16  channel it to another family member even though taxpayer had already disclaimed it

17  and, under state law, creditors could not reach the disclaimed property); *Nat'l Bank of*

18  *Com.*, 472 U.S. at 726–727 (holding federal lien attached to taxpayer's right under

19  state law to withdraw funds from a shared bank account such that IRS could levy on

20  the bank account even though, under state law, creditors could not); *Bess*, 357 U.S. at

21  56 (1958) (holding federal lien attached to taxpayer's right to demand cash value of

22  insurance policy even though "under state law the insured's property right

23  represented by the cash surrender value is not subject to creditors' liens").  Therefore,

24  as Mr. Bryan has a state-law right to void the 2018 transaction, the United States may

25  step into Mr. Bryan's shoes and void it on his behalf.  *See Allahyari*, 980 F.3d at 694

26  (holding United States could step into taxpayer's shoes and exercise interest on their

27  behalf pursuant to a § 7403 action); *see also* 14A Mertens Law of Fed. Income Tax'n

28  § 54A:61 (explaining that, in a lien foreclosure suit, when "identifying assets to be sold

13

1    in order to satisfy a federal tax lien, the United States 'steps into the taxpayer's shoes'

2    and 'acquires whatever rights the taxpayer himself possesses'" (quoting *Nat'l Bank of*

3    *Com.*, 472 U.S. at 725)); *see also United States v. Craft*, 535 U.S. 274, 288 (2002)

4    (holding tax lien could attach to husband's interest in property even though state law

5    prohibited other creditors from reaching the property).

6          Although *Safarian* held third parties lack standing to challenge the validity of a

7    transmutation based on noncompliance with section 852, *Safarian*, 47 Cal. App. 5th at

8    1068, the United States no longer qualifies as a third party to the transaction.  Rather,

9    the United States has stepped into Mr. Bryan's shoes and may exercise his rights with

10   respect to the transaction.  The Ninth Circuit came to a similar conclusion in *United*

11   *States v. Allahyari*, 980 F.3d 684.  In that case, the United States argued its lien on all of

12   a taxpayer's property entitled it to assert a statute of limitations defense to payments

13   owed to a trust with a superior lien.  *Id.* at 693.  The Ninth Circuit rejected the

14   argument that the United States could not assert this defense because it "lack[ed]

15   standing to do so, citing cases relating to third-party enforcement of contracts."  *Id.* at

16   694.  The Court responded that the United States was "no longer a stranger to the

17   contract" because the district court determined the United States had a "claim or

18   interest" in the property.  *Id.*  Therefore, once "the United States stepped into [the

19   party's] shoes, via a § 7403 action, there became no reason why it could not assert that

20   defense" even though the original party "might have chosen not to." *Id.* at 693–94.

21          Ms. Bryan also argues the United States cannot void the transaction as Mr.

22   Bryan would be estopped from doing so.  (Opp'n at 15.)  She argues Mr. Bryan's

23   deposition testimony supplies evidence that he orally agreed to the transmutation

24   such that he would be barred from disclaiming its validity years later. (*Id.*)  Though the

25   United States disputes this evidence, this factual dispute is immaterial.  As the

26   California Supreme Court has repeatedly emphasized, evidence of an oral agreement

27   between the parties cannot transmute property.  *See Benson*, 36 Cal. 4th at 1106

28   (explaining that "section 852 blocks efforts to transmute marital property based on

14

evidence—oral, behavioral, or documentary—that is easily manipulated and unreliable"); *Est. of MacDonald*, 51 Cal. 3d 262, 269 (1990), *as modified* (Sept. 6, 1990) (stating that there is "no question that the Legislature intended" this Section to "invalidate all solely oral transmutations").  It would therefore make little sense to permit evidence of an oral transmutation agreement to estop a party from voiding a transaction that cannot be validated by oral agreement.

* * *

As Mr. Bryan has a state-law right to void the 2018 transaction, the federal lien extends to that property right.  The United States may therefore step into Mr. Bryan's shoes and void it on his behalf to render the Subject Property community property.  As a result, the United States may use the whole proceeds of the sale of the Subject Property in the satisfaction of its lien.[8]

**CONCLUSION**

For the reasons stated above, it is hereby ORDERED that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 201) is GRANTED.

2. Defendant Mark L. Bryan's Motion for Leave to Amend (ECF No. 227) is DENIED.

3. Defendant Mark L. Bryan's Motion to Dismiss (ECF No. 229) is DENIED AS MOOT.

4. The hearing set for 1/8/2026 at 1:30 PM is VACATED.

////

////

////

////

////

////

---

[8] As the Court grants summary judgment for Plaintiff on these grounds, it is unnecessary to address the parties' arguments concerning whether the 2018 transaction constitutes a fraudulent transaction.

5. The United States is ORDERED to file a status report with the total amount of the judgment as of the date of entry of this Order within seven days.

6. The parties are also ORDERED to file a joint status report within fourteen days identifying if there are any outstanding issues to be resolved prior to the Court entering judgment.

Dated:  December 16, 2025

THE HONORABLE DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE

DJC7 – Bryan22cv01962.msj

16